**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-353-GLR** |
| | * | |
| **ERIC TANO TATAW,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY RELEASE CONDITIONS**

The United States of America, through undersigned counsel, opposes the Defendant's Motion to Modify Release Conditions. Following a hearing this February, this Court denied the Defendant's prior request to modify his conditions of release to allow him to work at a restaurant purportedly owned by his wife. As made plain in that hearing, no such functioning restaurant existed. The Defendant now returns to renew that request, claiming that the restaurant has been functioning since April and attaching a financial statement in support. That financial statement is of dubious veracity, as illustrated by public reporting on the restaurant and local notices. The Defendant's repeated lack of candor heightens the Government's preexisting concerns that the Defendant's represents a serious risk of flight and a danger to this case's victim witnesses. For these reasons, the Court should deny the motion.

**BACKGROUND**

In September 2023, the Defendant, Eric Tataw, was charged in a complaint with obstruction of justice in violation of 18 U.S.C. § 1512(b). Dkt. 1. As alleged in the complaint, the Defendant approached a subpoenaed grand jury witness and urged him to provide false testimony and fraudulent documents related to an ongoing fraud investigation. At one point, the Defendant "got close to Witness 1's face during the encounter and appeared ready to beat

Witness 1." *Id* at ¶ 13. Following a detention hearing, the Court placed Mr. Tataw on twenty-four-hour lockdown at his residence except for medical necessities, attorney visits, court appearances, or other activities specifically approved by the court. Dkt. 15.

The following month, a grand jury indicted the Defendant on seven counts: two counts of bank fraud, in violation of 18 U.S.C. § 1344; one count of money laundering, in violation of 18 U.S.C. § 1957; one count of wire fraud, in violation of 18 U.S.C. § 1343; one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A; and two counts of obstruction of justice, in violation of 18 U.S.C. § 1503. Dkt. No. 23. The Defendant is charged with, among other things, submitting multiple fraudulent COVID-19 relief-related loan applications and using a portion of those funds to impermissibly purchase cryptocurrency. The obstruction of justice counts expand on the complaint, alleging that the Defendant solicited two witnesses to provide false testimony and fraudulent documents related to a federal grand jury. The Defendant remained on the same conditions of release. Dkt. 25.

The Defendant requested that his conditions of release be modified in December. Dkt. 30. Among other requests, the Defendant sought to leave lockdown to work at Dimmples Kettles – a restaurant purportedly owned by his wife located in Silver Spring. At a hearing on February 8, 2024, the Government presented evidence that no functioning restaurant of that name existed in Silver Spring. Pictures of the relevant location (8703 Georgia Avenue) showed an empty storefront, with paint cans, trash bags, ladders, and a layer of dust or construction debris over much of the floor. The Court denied this portion of Defendant's motion. Dkt. 32.

Last week, the Defendant filed a second motion to modify conditions of release – again requesting to work at Dimmples Kettles. Dkt. 42. In support of his motion, the Defendant attached a financial statement – created by Kenneth Ndikum, owner of Kenneth & Company

CPA LLC – purporting to demonstrating Dimmples Kettles's revenues and expenditures for April 2024. *See* Dkt. 42-2 ("Exhibit 2").

## STANDARD

Motions to modify conditions of release are governed by 18 U.S.C. § 3142(c) and the § 3142(g) factors. Accordingly, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person, the Court's determination is governed by: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the history and characteristics of the Defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(c)(3); *see also United States v. Johnson*, No. CR SAG-21-0287, 2022 WL 103098, at *2 (D. Md. Jan. 11, 2022).

## ARGUMENT

### I. The Profit & Loss Statement is Inconsistent with Other Evidence Regarding Dimmples Kettles's State and History of Operations

The prior request to modify conditions (that the Defendant is now renewing) was based on representations that Defendant would be working at a fully functioning restaurant. But, as demonstrated in the February 8 hearing, the purported site was in a state of disrepair – far from an operational establishment. While the restaurant now appears open, the Defendant appears to be inflating the restaurant's history and level of operability. He's attached in support of his motion an April 2024 financial statement (Dkt. 42-2 "Exhibit 2") of questionable veracity, challenged by publicly available information regarding Dimmples Kettles.

Federal law enforcement interviewed Kenneth Ndikum, owner of Kenneth & Company CPA LLC, on Monday May 20. Mr. Ndikum confirmed that he had created the Dimmples Kettles profit and loss statement at the request of the Defendant. Mr. Ndikum explained that he

had created the documents based on bank statements provided by the Defendant and the Defendant's own representations of Dimmples Kettles's business. Specifically, an individual using "contact@dimmples.com" sent Mr. Ndikum an email outlining the supposed restaurant income and expenses exactly as they appear on the profit and loss statement.[1] *See* Exhibit G-1. In that email and in phone conversations, Defendant advised Mr. Ndikum that Dimmples Kettles earned $30,000 in revenue during April 2024. This amount of revenue was not reflected in bank account statements that the Defendant provided.[2] The Defendant explained to Mr. Ndikum that a significant portion of the $30,000 consisted of cash payments not reflected in the bank account statements.

Evidence suggests, however that the restaurant was not operating during the month of April in a manner consistent with Exhibit 2. For example, the first posts on the Dimmples Kettles Instagram account appear in late April 2024. *See* https://www.instagram.com/dimmpleskettles/. Similarly, the earliest third-party media coverage of Dimmples Kettles that investigators have found are two articles announcing the restaurant's opening published on May 10 and May 12. *See Dimmples Kettles Now Open in Silver Spring*, The MoCo Show, (May 10, 2024 at 10:19am), https://mocoshow.com/2024/05/10/dimmples-kettles-now-open-in-silver-spring; *Savoring Global Flavors: Dimmples Kettles Brings Intercontinental Cuisine to Downtown Silver Spring*, Source of the Spring: Silver Spring & Takoma Park Community News, (May 12, 2024 at 9:00

[1] Mr. Ndikum stated that he was not the Defendant's accountant, and that the Defendant hired him only to make this profit and loss statement.

[2] The bank account statements do reflect several incoming wires into the Dimmples Kettles account – totaling $33,075. Mr. Ndikum understood that these transfers were either a transfer from another company owned by the Defendant or transfers from business partners investing in the business. These wires were not from restaurant services, and Mr. Ndikum explained to the Defendant that these wires could not be counted as revenue.

am), https://www.sourceofthespring.com/silver-spring-news/2823628/savoring-global-flavors-dimmples-kettles-brings-intercontinental-cuisine-to-downtown-silver-spring/.

These posts are consistent with the restaurant's current limited state of operability.[3] Law enforcement visited the 8703 Georgia Avenue site at approximately noon on May 16; the agent was the only potential customer in the restaurant. Employees at the site informed law enforcement that Dimmples Kitchen was in the midst of a "soft opening" with a limited menu; they stated that the full opening with an expanded menu would occur in approximately two weeks.

Public records also cast doubt on the veracity of the Dimmples Kettles profit and loss statement. The statement includes a $1,300 expenditure for "Liquor" in the month of April. Dimmples Kettles, however, had no liquor license in April. The Montgomery County Board of License Commissioners held a hearing regarding Dimmples Kettles liquor license only last week. *See* Exhibit G-2 at 2, Montgomery County Alcohol Beverage Services, May 16, 2024 Agenda (demonstrating that a "Hearing on the application by . . . Dimmples Kettles, LLC, for a New Class B, Beer, Wine & Liquor License . . . for the premises known as Dimmples Kettles" occurred on May 16, 2024).

## II. The Defendant's Lack of Candor Heightens the Government's Prior Concerns with Modifying the Conditions of Release.

While the restaurant appears open in some capacity, the unsubstantiated financial statement emphasizes the Defendant's consistent lack of candor when seeking broader pretrial release. This is the second time that the Defendant has withheld material relevant facts regarding

[3] The Government does not contest that Dimmples Kettles was operating in a limited capacity as of the filing of Defendant's current motion to modify release conditions.

the restaurant at which he wishes to work. Given the allegations of this case, the Defendant's continued behavior should disqualify him from an expanded pretrial release.

Courts across the country have found a Defendant's misrepresentations and lack of candor while on pretrial release relevant under the § 3142(g) factors. *See, e.g.*, *United States v. Patterson*, 2020 WL 6200164, at *10 (E.D. Cal. Oct. 22, 2020) ("To condone defendant's conduct and lack of candor to his pretrial services officer, is to show disdain to the office and the officer."); *United States v. Smith*, 2017 WL 1731711, at *2-3 (N.D. Iowa May 3, 2017) (incorporating "misrepresentations Defendant made to the court when seeking pretrial release" into its § 3142(g) analysis). Indeed, in the release context generally, a "lack of candor and muddled information [ ] are particularly troubling when the Court has to base its decision in large part on the Defendant's own representations". *United States v. Hernandez*, 2020 WL 1974234, at *2 (S.D.N.Y. Apr. 24, 2020). Such is the case here.

The Government explained in prior detention hearings how the § 3142(g) factors show this Defendant presents a danger that he will obstruct justice or threaten prospective witnesses. These points remain true. This Defendant is accused of aggressively intimidating witnesses he knew were poised to offer damaging testimony against him; he told witness what to say and created false documents for them to produce to grand jury, and the evidence he did so (recordings, grand jury testimony, the false documents) is robust. Now, it appears, the Defendant continues to produce misleading documents while on pretrial release.

The Defendant also continues to be a serious risk of flight. The financial viability of Dimmples Kettles aside, the Defendant still retains access to significant financial resources – as illustrated by the various incoming wires into the Dimmples Kettles account. Neither he nor his wife are U.S. citizens, and both have large families outside the country. And the Defendant faces

a significant prison sentence; on the obstruction of justice charge alone, the Defendant could have a guideline sentence of 70-87 months. To allow the Defendant to commute to and work in a restaurant that will be open well into the night – the "Restaurant" will close as late as 11:00PM and the "Bar/Lounge" will close as late as 3:00AM according to Dimmples Kettles's publicly posted hours, *see* https://www.dimmpleskettles.com/our-hours/ – is giving the Defendant too much of a chance to direct these resources to fleeing.

## CONCLUSION

For the reasons stated, the Government respectfully requests that this Court deny the Defendant's Motion to Modify Release Conditions.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: /s/
Joseph L. Wenner
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of May, 2024, a copy of the Government's Response in Opposition to Defendant's Motion to Modify Release Conditions was served electronically through the Clerk of the United States District Court using CM/ECF.

By: /s/
Joseph L. Wenner
Assistant United States Attorney